UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CONSTANCE JOY II, LLC,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:20-CV-02967 |
| § | |
| **STEWART & STEVENSON FDDA LLC** § | |
| **d/b/a FLORIDA DETROIT** § | |
| **DIESEL-ALLISON,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

This action arises out of services rendered in connection with the repair of a yacht, the Constance Joy. In 2018, the Constance Joy developed engine issues and required maintenance. So, Plaintiff Constance Joy II, LLC—the owner of the ship—hired Defendant FDDA, an engine parts and services company. FDDA serviced the engine and supposedly fixed the issue. During a sea test shortly afterward, however, a new issue arose causing the ship to fill with seawater. The engine room flooded, and the electrical panel was damaged. Constance Joy II sued FDDA, alleging that FDDA negligently repaired the ship, causing over $6.2 million in damages.

Now before the Court is FDDA's Motion for Summary Judgment, (Dkt. No. 129), as well as two motions to strike filed by Constance Joy II, LLC, (Dkt. Nos. 130, 132). FDDA argues that the economic loss rule precludes Constance Joy II, LLC's negligence claim. The Court **DENIES** Defendant FDDA's Motion for Summary Judgment, (Dkt. No. 129), **DENIES** as moot Plaintiff's Objections and Motion to Strike Defendant's Summary

Judgment Evidence, (Dkt. No. 132), and **DENIES** Plaintiff's Motion to Strike Defendant's Expert Pierce N. Power, (Dkt. No. 130).

**I.     BACKGROUND[1]**

Barry Skolnick is the sole member of Plaintiff Constance Joy II, LLC, which, in turn, owns the Constance Joy, a 125-foot yacht. (Dkt. No. 131 at 7). After the vessel was constructed in May 2018, it underwent a sea test during which the engine overheated and lost power. (Dkt. No. 131-3 at 21). For warranty-related reasons, Constance Joy II, LLC hired Defendant Stewart & Stevenson FDDA LLC, d/b/a Florida Detroit Diesel-Allison ("FDDA"), an engine parts and services company, to perform repairs. (Dkt. No. 131 at 8). FDDA, an authorized agent of the vessel's engine manufacturer, serviced the ship's heat exchange plates. (Dkt. No. 131-2 at 45, 50).

As part of the maintenance, FDDA personnel removed part of a hose, described as "a six-inch, raw water sea pipe," and later put it back in place. (*Id.* at 68). After the repairs, the Constance Joy was again sea-tested, at which point the hose loosened. (*Id.* at 67–68). As a result, seawater poured into the engine room where the main electric panel was located. (Dkt. No. 131 at 6). This resulted in extensive damage to the vessel, including its entire electrical control system. (*Id.*).

Constance Joy II, LLC sued FDDA for negligence, claiming that FDDA's technician did not properly re-tighten the hose clamps, which allowed the hose to break loose and

---

[1] Except where noted, this section contains only undisputed facts, which have been construed in the favor of the nonmovant. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007).

2

flood the ship's electrical control system. (*Id.*); (Dkt. No. 39 at 1–3). Constance Joy II, LLC seeks damages "in excess of $6.2 million" in connection with the ship's repairs, including various expenses incurred as a result of the flooding. (Dkt. No. 39 at 7–8).

Constance Joy II, LLC filed this action against MTU America Inc., and FDDA in Broward County, Florida (collectively, "Defendants"), and Defendants removed the case to the United States District Court for the Southern District of Florida. (Dkt. No. 1). Before removal, Defendants moved for partial dismissal based on a forum selection clause designating Houston, Texas as the proper venue for repair-related disputes. (Dkt. No. 1-2 at 5–7). After removal, the Florida district judge considered and denied Defendants' state-court motion to dismiss. (Dkt. No. 18). Constance Joy II, LLC argued that the relevant contracts—the Service Repair Orders ("SROs")—were unenforceable because the ship's engineer and captain, Waugh and Nicholls, lacked authority to enter into them. (Dkt. No. 10 at 4–11). The Florida district judge determined that the SROs were enforceable because, based on the pleadings, Engineer Waugh and Captain Nicholls acted with apparent authority when they entered into the contracts. (Dkt. No. 18 at 7–10). The case was transferred to the Southern District of Texas. (Dkt. No. 19).

After the case was transferred, Defendants sought dismissal on various grounds. Specifically, MTU America, Inc., moved to dismiss for lack of personal jurisdiction, venue and for failure to state a claim. (Dkt. No. 45). FDDA moved to dismiss only on failure-to-state-a-claim grounds. (Dkt. No. 44). As to MTU America, Inc.'s motion, Judge Lynn Hughes, then presiding, granted dismissal on Constance Joy II, LLC's vicarious liability

3

claim—the only claim alleged against MTU America. (Dkt. Nos. 78, 79). Judge Hughes denied FDDA's motion. (Dkt. No. 79).

Several months later, Constance Joy II, LLC and FDDA filed cross-motions for partial summary judgment on the issue of authority, i.e., whether Engineer Waugh and Captain Nicholls had the authority to enter into the SROs. (Dkt. Nos. 95–96). Judge Hughes denied both motions finding that, while no actual authority existed, the dispute regarding apparent authority hinged on a credibility determination "best left for the jury." (Dkt. No. 101 at 3). This case was reassigned to the undersigned. (Dkt. No. 117). FDDA has now moved for summary judgment. (Dkt. No. 129), and Constance Joy, LLC, moved to strike FDDA's expert's opinion, (Dkt. No. 130), and FDDA's summary judgment evidence, (Dkt. No. 132).

## II.     EVIDENTIARY ISSUES

Before proceeding to the motion for summary judgment, the Court addresses two evidentiary issues. First, Constance Joy II, LLC moves to strike two affidavits, including two exhibits attached to one of the affidavits, as improper summary judgment evidence. (Dkt. No. 132). Second, Constance Joy II, LLC moves to strike three opinions offered by FDDA's designated expert Pierce N. Power. (Dkt. No. 130).

### A.     PAUL ST. JOHN JR. AND SYLVIA MORENO AFFIDAVITS

Constance Joy II, LLC argues that the affidavit of Paul St. John Jr. (the "St. John Affidavit") as well as the attached exhibits ("Exhibits 1 and 2") and the affidavit of Sylvia Moreno (the "Moreno Affidavit") should be stricken. (Dkt. No. 132). Constance Joy II, LLC's arguments are threefold: (1) the St. John Affidavit "is not based on personal

4

knowledge and has several inconsistencies," (2) Exhibits 1 and 2 of that affidavit "were not produced in discovery and are unauthenticated, inadmissible hearsay," and (3) the Moreno Affidavit "was not made based on personal knowledge." (*Id.* at 1).

Upon review, the substance of these objections relates to FDDA's billing procedures, which ostensibly goes toward the issue of ratification. But as explained below, the Court need not rely on the disputed evidence in resolving this Motion. *See infra* Sec. V.A.3. Constance Joy II, LLC's Objections and Motion to Strike Defendant's Summary Judgment Evidence, (Dkt. No. 132), is **DENIED**.

### B.     PIERCE N. POWER

Constance Joy II, LLC also moves to strike the opinion of Pierce N. Power, who has been designated as a causation and damages expert. (Dkt. No. 130). Specifically, Constance Joy II, LLC moves to exclude three of Power's opinions: (1) a causation opinion on how the incident occurred, on grounds that it is improper and unreliable; (2) a mixed causation and damages opinion on whether an FDDA technician would have prevented some of the damage, on grounds that it is unsupported speculation; and (3) a damages opinion on the direct repair costs incurred, on grounds that it is not expert in nature. (*Id.* at 20–27). Since the present case will be tried to the bench as opposed to a jury, (*see* Dkt. No. 110), the Motion is **DENIED**.[2]

---

2     *See, e.g.*, *IFG Port Holdings, LLC. v. Lake Charles Harbor & Terminal Dist.*, No. 2:16-CV-00146, 2019 WL 13119274, at *2 (W.D. La. Mar. 7, 2019) (declining to strike purportedly unreliable expert testimony for a bench trial); *Am. Home Assurance Co. v. Flasher Ltd.*, No. 5:10-CV-00265, 2012 WL 13028295, at *1 (W.D. Tex. Nov. 5, 2012) (same); *Whitehouse Hotel L.P. v. Comm'r*, 615 F.3d 321, 330 (5th Cir. 2010) ("[T]he importance of the trial court's gatekeeper role is significantly
(continue)

### III.  LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit under governing law. *E.g.*, *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018). And, a "fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

If the movant meets this burden, the nonmovant must come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the

---

diminished in bench trials . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence.").

nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quotations omitted). "The nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim." *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (cleaned up). If evidence is merely colorable or not significantly probative summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that factual controversies are to be resolved in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## IV. APPLICABLE LAW

"With admiralty jurisdiction comes the application of substantive admiralty law."[3] *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 2298–99, 90 L.Ed.2d 865 (1986); *see also One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011) ("A contract for the repair of a ship is a maritime contract,

---

[3] As explained by the Fifth Circuit, the term "admiralty" traditionally refers to the courts, jurisdiction, and procedure of maritime law, and "maritime" refers to the substantive law itself. *Poincon v. Offshore Marine Contractors, Inc.*, 9 F.4th 289, 294 n.2 (5th Cir. 2021). But "[t]hat distinction has faded over time, and 'admiralty' and 'maritime' are now used largely synonymously." *Id.* For purposes of this Order, there is no practical distinction between the terms.

governed by general maritime law."). This rule means that "federal common law governs admiralty suits." *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 587 (5th Cir. 1983) (per curiam). And "[u]nder federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable." *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009).

## V. DISCUSSION

Now onto the merits. FDDA makes a two-part argument as to why summary judgment is proper: (1) that a valid, enforceable contract exists, and (2) because an enforceable contract exists, the economic loss rule precludes the negligence tort claim at issue. (Dkt. No. 129 at 6).

### A. WHETHER AN ENFORCEABLE CONTRACT EXISTS

In asserting that a valid contract exists between the Parties, FDDA argues that the issue has already been decided by the Florida district court, and therefore the law of the case doctrine binds this Court now. (Dkt. No. 129 at 10–12). FDDA then argues that an agency relationship was established in this case. (*Id.*). Finally, FDDA contends that even had Captain Nicholls acted without actual or even apparent authority, Constance Joy II, LLC ratified the terms of the contract. (*Id.* at 12–14).

#### 1. Law-of-the-Case

Broadly stated, the law-of-the-case doctrine provides that settled issues should not be revisited during the pendency of a lawsuit. *See, e.g., In re Ford Motor Co.*, 591 F.3d 406, 411–12 (5th Cir. 2009) (per curiam); *F.D.I.C. v. McFarland*, 243 F.3d 876, 884 (5th Cir. 2001). However, a court may still reconsider its prior decisions, as the law-of-the-case doctrine

merely "directs a court's discretion" and "does not limit [its] power."  *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983), *decision supplemented*, 466 U.S. 144, 104 S.Ct. 1900, 80 L.Ed.2d 194 (1984).  The distinction between a court correcting its own error versus that of another judge who oversaw the case previously "is of no moment."  *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  The doctrine is "a rule of convenience designed to prevent unnecessary reconsideration of previously decided issues," *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010), but also one that "yields to adequate reason."  *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983).

Application of the law-of-the-case doctrine is ill-suited for this case.  The Florida district court found that apparent authority existed *for 12(b)(6) purposes*.  The law-of-the-case doctrine "does not bar" a court from reaching a conclusion at summary judgment that is different from a ruling at the motion-to-dismiss stage.  *Lockheed Martin Corp. v. Network Sols., Inc.*, 141 F.Supp.2d 648, 654 (N.D. Tex. 2001) (citing *Loumar*, 698 F.2d at 762).  This result is intuitive, as "[t]he standards for motions to dismiss and for motions for summary judgment are entirely different."  *Frakes v. Masden*, No. 4:14-CV-01753, 2015 WL 1637893, at *2 n.1 (S.D. Tex. Apr. 13, 2015), *aff'd sub nom. Frakes v. Ott*, 668 F.App'x 130 (5th Cir. 2016).  Therefore, the Court rejects FDDA's argument that the Florida district court's 12(b)(6) ruling should control for summary judgment purposes.

Judge Hughes's determination that there is a fact question on the issue of apparent authority is also reviewable.  That determination was made on partial summary judgment and, accordingly, is interlocutory.  *See, e.g., Calpetco 1981, LP v. Marshall Expl.,*

9

*Inc.*, 989 F.2d 1408, 1414–15 (5th Cir. 1993); *Golman v. Tesoro Drilling Corp.*, 700 F.2d 249, 253 (5th Cir. 1983) (per curiam). As the Fifth Circuit explained, "a district court is not precluded by the law-of-the-case doctrine from reconsidering previous rulings on interlocutory orders . . . as those rulings are not immutable and lack res judicata effect." *United States v. Palmer*, 122 F.3d 215, 220 (5th Cir. 1997). Here, in denying partial summary judgment on the issue of apparent authority, Judge Hughes stated that the "key problem" was that Engineer Waugh and Captain Nicholls had been "unavailable and not found for the entire duration of the lawsuit." (Dkt. No. 101 at 3). After his ruling, Judge Hughes directed additional discovery on the issue of apparent authority, (*see* Dkt. Nos. 105, 112), and in its present Motion, FDDA cites to deposition transcripts of both Engineer Waugh and Captain Nicholls. (*See* Dkt. Nos. 129-3, 129-4). Accordingly, the Court will exercise its discretion and reconsider the issue of apparent authority.

### 2. Agency Relationship

The Court now turns to whether Captain Nicholls had the authority to bind Constance Joy II, LLC. The Parties do not dispute that the SRO at issue is the final SRO from May 29, 2018. (Dkt. No. 129 at 8–9). That SRO provides for "HEAT EXCHANGER SERVICE TO PORT AND STBD ENGINES." (Dkt. No. 129–2 at 2). FDDA repeatedly refers to Captain Nicholls as the signatory of the May 29, 2018 SRO. (*See* Dkt. No. 129). Constance Joy II, LLC does not contest this assertion, and refers to Captain Nicholls as "the agent" at issue. (*See* Dkt. No. 131 at 6). In his deposition, Captain Nicholls confirmed that it was his signature on the May 29, 2018 SRO. (Dkt. No. 129-3 at 50). Conversely, Engineer Waugh testified that he did not recognize the signature on the SRO, and it was

10

not his. (Dkt. No. 129-4 at 28). Based on the uncontroverted evidence, and the Parties' representations, the Court reviews whether Captain Nicholls had actual or apparent authority to sign the May 29, 2018 SRO as agent for FDDA.

### a. Actual Authority

"Federal maritime law incorporates basic principles of agency law." *MTO Mar. Transp. Overseas, Inc. v. McLendon Forwarding Co.*, 837 F.2d 215, 218 (5th Cir. 1988). "The Fifth Circuit looks to the Restatement of Agency as a source of general agency law to be applied in admiralty cases." *Overseas Carriers, Inc. v. Team Ocean Servs.-Dall., Inc.*, No. 4:10-CV-02842, 2013 WL 76300, at *12 (S.D. Tex. Jan. 4, 2013) (citing *Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.*, 800 F.2d 1418, 1420 (5th Cir. 1986)). The Restatement provides that "[a]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2006).

FDDA has apparently abandoned the argument that any agent (Engineer Waugh or Captain Nicholls) had actual authority, (*see* Dkt. Nos. 129, 135) (omitting mention of actual authority). In any event, the employment contract expressly provided that they "shall not have any right or power to bind the Employer, any agent or owner, to any engagement, opportunity, or contract[.]" (Dkt. No. 101 at 1–2); (Dkt. No. 131-7 at 11–12). Accordingly, neither Engineer Waugh nor Captain Nicholls had actual authority to bind Constance Joy II, LLC.

11

      b.      <u>Apparent Authority</u>

Apparent authority is defined as "the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Overseas Carriers, Inc.*, 2013 WL 76300, at *12 (quoting Restatement (Third) of Agency § 2.03 (2006)). As explained by the Fifth Circuit, apparent authority must be rooted in some manifestation by the principal that "causes the third person to believe that the agent is authorized to act for him or the principal should realize that his conduct is likely to create such a belief." *Cactus Pipe & Supply Co., Inc. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985).

Constance Joy II, LLC argues that Captain Nicholls did not have apparent authority because the inquiry looks only to the conduct of the principal, and here, the owner of the vessel—Barry Skolnick—did nothing to make FDDA believe that Captain Nicholls was authorized to act on his behalf. (*See* Dkt. No. 131 at 15–18). This point, however, is not necessarily true because the very act of making Captain Nicholls the captain *could* suffice to confer apparent authority. *See, e.g.*, Restatement (Third) of Agency § 2.03 reporter's note a (2006) ("a principal may create apparent authority by appointing a person to a particular position"); *id.* § 3.03 cmt. c ("[a]pparent authority in an organizational setting may also arise from the fact that a person occupies a type of position that customarily carries specific authority although the organization has withheld such authority from that agent").

12

It is undisputed that Captain Nicholls was the captain of the vessel. That might have (1) caused FDDA to believe Captain Nichols "is authorized to act for" Constance Joy II, LLC, or (2) Constance Joy II, LLC "should [have] realize[d] . . . is likely to create such a belief." *Cactus Pipe*, 756 F.2d at 1111. "Questions of apparent authority are questions of fact[.]" *Wood v. Holiday Inns, Inc.*, 508 F.2d 167, 176 (5th Cir. 1975). Accordingly, the Court cannot say, as a matter of law, that Captain Nichols did or did not have apparent authority.

### 3. Ratification

FDDA further argues that "[d]istinct from the agency authority exercised by Captain Nicholls," the May 29, 2018 SRO and its relevant terms were also ratified by Constance Joy II, LLC. (Dkt. No. 129 at 12–14). "[R]atification is a doctrine of agency law, and allows a principal to be bound by an agent's unauthorized contract in circumstances where the principal becomes aware of the contract and retains benefits under it." *Willis v. Donnelly*, 199 S.W.3d 262, 273 (Tex. 2006). Once ratified, a formerly unauthorized act is treated as if it had originally been authorized. *See Verizon Corporate Servs. v. Kan-Pak Sys., Inc.*, 290 S.W.3d 899, 906 (Tex.App.--Amarillo 2009, no pet.).

"Ratification, however, presupposes that the principal has an agent who, by agreement, is authorized to act on the principal's behalf." *Id.*; *see also Pylant v. Cuba*, No. 3:14-CV-00745, 2015 WL 12753659, at *2 (N.D. Tex. Jan. 22, 2015) (finding that ratification under Texas law requires that an agency relationship exist); *Averett v. CAPX Realty, LLC*, No. 05-13-00885-CV, 2014 WL 3756485, at *2 (Tex. App—Dallas July 30, 2014, no pet.) (same). Therefore, ratification "requires that there be an underlying agency relationship

between the principal and agent." *In re USA Promlite Tech. Inc.*, No. 18-36893, 2023 WL 3081329, at *11 (Bankr. S.D. Tex. Apr. 25, 2023). Whether a person has ratified an act is essentially a question of fact, to be determined from all the circumstances in evidence. *Jerry L. Starkey, TBDL, L.P. v. Graves*, 448 S.W.3d 88, 102 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021) ("Ratification is often treated as a mixed question of law and fact.").

In this case, the Court has found that there are genuine issues of material fact as to whether Captain Nichols had authority to bind Constance Joy II, LLC to the contract at issue. Even assuming that he did, the Court finds that there are fact issues as to whether Constance Joy II, LLC ratified the contract. Accordingly, the Court finds that FDDA has failed to establish that it is entitled to judgment as a matter of law on the issue of ratification.

**B.     WHETHER THE ECONOMIC LOSS RULE PRECLUDES THE NEGLIGENCE CLAIM**

In its Motion for Summary Judgment, FDDA insists that the economic loss rule bars Constance Joy II's claims. To meet its burden, FDDA must show two things: (1) that the May 29, 2018 SRO is a valid, enforceable contract, and (2) the economic loss rule applies to preclude the negligence claim at issue. (Dkt. No. 129 at 6). FDDA's argument fails. Even assuming the presence of an enforceable contract, the Court finds that the economic loss rule would not preclude Constance Joy II, LLC's claims.

On this issue, Texas law controls.[4] And under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam). But the rule "does not bar all tort claims arising out of a contractual setting." *Id.* Texas law recognizes that accompanying every contract is "a common law duty to perform with care and skill." *Id.* "[T]he failure to meet this implied standard might provide a basis for recovery in tort, contract, or both under certain circumstances." *Id.* The key inquiry is "whether the loss is to 'the subject of the contract.'" *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 227 (Tex. 2022) (quoting *LAN/STV v. Martin K. Eby Constr. Co., Inc.*, 435 S.W.3d 234, 242 (Tex. 2014)), *reh'g denied* (June 17, 2022). Thus, a party can maintain a tort claim arising out of a contract "when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Hilburn v. Storage Tr. Props., LP*, 586 S.W.3d 501, 508 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Chapman*, 445 S.W.3d at 718).

---

[4] For the economic loss rule to apply, an enforceable contract must be present. *See Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (Economic loss rule "precludes recovery in tort for economic losses resulting from a party's failure to perform *under a contract* when the harm consists only of the economic loss of a contractual expectancy.") (emphasis added). Thus, the Court must assume that the Parties are bound by the May 29, 2018 SRO. That agreement specifies that law governs "all matters arising out of or relating to" the contract. (Dkt. No. 129-2 at 4). So, assuming that the May 29, 2018 SRO is enforceable, its choice-of-law provision controls. *Edminster, Hinshaw, Russ and Assoc., Inc. v. Downe Township*, 953 F.3d 348, 351 (5th Cir. 2020) ("[T]he choice-of-law provision has force only if the parties validly formed a contract.").

Two Texas cases make clear that the economic loss rule is inapplicable here. *See Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508 (Tex. 1947) and *Chapman*, 445 S.W.3d 716. In *Scharrenbeck*, the plaintiff contracted with the defendant for maintenance on a heater in the plaintiff's home. *Scharrenbeck*, 204 S.W.2d at 509. The maintenance did not go as planned, and the plaintiffs home burned to the ground. *Id.* The Supreme Court of Texas found the economic loss rule inapplicable, explaining that in undertaking the repairs, the repairman had a duty by implication to not negligently burn down the plaintiff's house in performing the contract. *Id.* at 511.

In *Chapman*, the plaintiff contracted for the installation of a plumbing system in a house. 445 S.W.3d at 718. The plumber failed to install the system properly, and water flooded the house, causing extensive damage. *Id.* at 717. The Supreme Court of Texas found that the economic loss rule did not apply because "[t]he plumber's duty not to flood or otherwise damage the house is independent of any obligation undertaken in its plumbing subcontract with the builder, and the damages allegedly caused by the breach of that duty extend beyond the economic loss of any anticipated benefit under the plumbing contract." *Id.* at 718–19.

The present case falls squarely in line with *Scharrenbeck* and *Chapman* as examples of losses suffered that were not "the subject of the contract." *LAN/STV*, 435 S.W.3d at 242. The May 29, 2018 SRO provided for "HEAT EXCHANGER SERVICE TO PORT AND STBD ENGINES." (Dkt. No. 129-2 at 2). Specifically, "FDDA was contracted to remove and clean the ship's heat exchanger ('H/E') plates." (Dkt. No. 129 at 17). To do so, FDDA had to remove and reassemble the seawater hose, which was adjacent to the

16

main electrical panel in the engine room. (Dkt. No. 129-3 at 68). Constance Joy II, LLC alleges that FDDA's failure to properly refasten the hose caused flooding in the engine room which damaged the vessel's electrical system. (*See, e.g.*, Dkt. No. 131-4 at 38) ("[T]he electrical system was completely damaged and needed to be remediated."). Just like the fire in *Scharrenbeck* and the flooding in *Chapman*, the FDDA technician's duty not to flood the ship was "independent of the contractual undertaking" in the May 29, 2018 SRO. *Chapman*, 445 S.W.3d at 719.

Here, "the subject of the contract" extends at most to the engines that the plates were removed to service. *LAN/STV*, 435 S.W.3d at 242. The contractual expectancy was unrelated to the vessel's electrical system, which was damaged as a result of FDDA's alleged negligent performance of the contract. Sometimes, a contract is the "mere inducement" that sets the stage for a tort to occur. *Scharrenbeck*, 204 S.W.2d at 157. To the extent that FDDA had a general duty of care in the execution of that contract, its "negligent performance . . . may constitute actionable negligence." *Id.* Thus, the economic loss rule is inapplicable, should the Court ultimately find there to be a binding contract.

## VI.   CONCLUSION

In sum, FDDA has not shown that it is entitled to prevail as a matter of law. As a result, FDDA's Motion for Summary Judgment is **DENIED**. (Dkt. No. 129). The Court also **DENIES** as moot Plaintiff's Objections and Motion to Strike Defendant's Summary Judgment Evidence, (Dkt. No. 132), and **DENIES** Plaintiff's Motion to Strike Defendant's Expert Pierce N. Power, (Dkt. No. 130).

It is SO ORDERED.

Signed on August 30, 2024.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**